52 N.J. Super. 522 (1958)
145 A.2d 823
APEX ROOFING SUPPLY CO., A CORPORATION OF NEW JERSEY, PLAINTIFF-CLAIMANT,
v.
H.W. ELLIOT CO., INC., BUILDER, AND THEODORE DUDA AND HELEN DUDA, OWNERS, DEFENDANTS.
Superior Court of New Jersey, Union County District Court.
Decided November 14, 1958.
Mr. Louis Asarnow, attorney for plaintiff-claimant.
Mr. Rocco F. DePaola, attorney for defendants.
*523 FULOP, J.C.C. (temporarily assigned).
This is a mechanics' lien action. Plaintiff is a materialman who filed a notice of intention on February 18, 1958. On February 21, 1958 plaintiff mailed notice thereof by registered mail to the defendant owners pursuant to N.J.S. 2A:44-71, as amended by L. 1957, c. 232, approved February 3, 1958, purporting to be effective July 1, 1957. The notice was not received by the defendant owners until February 25, 1958, more than five days after the filing of the notice of intention.
February 22 was a Saturday, and a holiday. February 23 was a Sunday. The five days expired on that day. Delivery on Monday would have been sufficient. Why the registered letter was not delivered on Monday, February 24, does not appear. It was certainly not due to any default of the plaintiff.
Defendant owners contend that the statutory provision that notice be "given within five days of such filing to the owner * * * personally or by registered mail, to the last known address, and unless such notice * * * be so given, the filing * * * shall have no force or effect," requires that the notice be received by the owners within five days. Plaintiff contends that it is sufficient that it be mailed within the five days by registered mail.
The rules of court do not govern the procedure for the creation of the lien. They apply only with respect to the procedure in the action enforcing the lien. See the majority and minority opinions in Columbia Lumber & Millwork Co., Inc. v. DeStefano, 12 N.J. 117 (1953).
Even by way of analogy, the rules are not helpful. They provide for service of notices and other papers by registered or certified mail. The rules further provide that, when such service is authorized, it "shall be complete upon mailing." R.R. 4:5-2. Thus, there is an express provision covering the effect of the mailing. There is no similar provision in the statute. If the language of the rule and the statute were otherwise alike, the omission of this provision by the Legislature would be significant. However, the rules *524 provide for "service" and prescribe the method of service. The statute provides for "giving" of notice with much less detailed provisions as to the method. There is a difference between "serving" notice and "giving" notice. Vogel v. Sloan, 98 N.J. Eq. 300 (Ch. 1925).
In the stop notice provisions of the very same statute, service of a stop notice upon the owner is provided for and the method of service prescribed as carefully as in the rules. N.J.S. 2A:44-78 and 2A:44-79. With respect to the latter provision, Chief Justice Gummere held in J.D. Loizeaux Lumber Co. v. Steinberg, 102 N.J.L. 15 (Sup. Ct. 1925), that:
"* * * This amendment provides that service of a written notice shall be made by the materialman both upon the owner and the contractor of the money due to him, `and that the owner shall thereupon be authorized to retain the amount so due to the materialman' out of the moneys due or to grow due from the former to the contractor. But we are not willing to attribute to the legislature an intent to deprive the materialman of the benefit of the third section unless he complies with the very letter of the clause appealed to, although such compliance is shown to have been impossible. If service upon the contractor can be made, such service is a prerequisite to the right of the materialman to look to the owner for payment. But if it is shown that failure to make such service is due to the fact that the contractor has died, or has absconded from his creditors and cannot be found, the requirement that such service shall be made does not apply. In other words, the legislative purpose, as we read the statute, was that this provision should only be applicable when compliance therewith was humanly possible, and should not bar the materialman from the benefits of the third section of the act when such compliance was impossible. * * *"
The word "give" has many meanings. In the sense here used it means to deliver or communicate. However, the method of delivery or communication is prescribed. It may be personally or by registered mail. The two are coordinate, and therefore equal, one to the other.
In addition, the statute makes such mailing sufficient if sent to the owner's "last known address." The obvious implication is that the lien claimant is not required to seek out the owner wherever he may be. If the last known *525 address is not the correct address, the statute nevertheless makes the mailing sufficient.
It must be remembered that the lien refers to real property within the State. The owner may be out of the State. Notice is given by the filing in the office of the county clerk. Until the amendment in question, this was deemed sufficient without mailing or delivery. Persons dealing with real property are expected to look in the record offices for matters affecting the property. The additional mailing is merely to alert the owner. The proceedings are quasi in rem. The Legislature might have provided for posting on the premises.
It seems clear that the Legislature did not intend that a lien claimant fly to Europe or Asia to serve the owner within five days. Nor is it to be supposed that a lien claim is to be granted or withheld depending upon whether the mailman can find the owner within five days.
The mailing to the last known address by registered mail within the five days is compliance with the statute. See Building Supplies, Inc. v. Gillingham, 17 Wash.2d 489, 135 P.2d 832 (Sup. Ct. 1943), reaching the same result.
Special judgment for $563.75 and costs will be entered against defendants Theodore and Helen Duda as owners, establishing a lien against the property in question. A written judgment will be required.